Jane DOE, Plaintiff,

v.

BOARD OF COUNTY COMMISSION-
ERS, PALM BEACH COUNTY,
FLORIDA, Defendant.

No. 91–8069–CIV.

United States District Court,
S.D. Florida.

Jan. 30, 1992.

Isidro M. Garcia, Lake Worth, Fla., for
plaintiff.

Denise J. Bleau, Asst. County Atty.,
West Palm Beach, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion to Amend Complaint, pursuant to *Fed.R.Civ.P.* 15(a). In her motion, Plaintiff seeks to add a claim under 42 U.S.C.A. § 1981, and to amend her claim under Title VII of the Civil Rights Act of 1964, both in light of the Civil Rights Act of 1991 ("1991 Act"), enacted on November 21, 1991. Plaintiff asserts that the 1991 Act applies retroactively to her case, thereby permitting the proposed amendments. Plaintiff also seeks to reinstate a previously withdrawn claim for intentional infliction of emotional distress. Defendant opposed Plaintiff's motion as it pertains to the retroactive application of the 1991 Act, but did not oppose the reinstatement of the tort claim.

As more fully articulated below, this Court has concluded that the 1991 Act *does not* apply retroactively to Plaintiff's suit. Therefore, Plaintiff's motion to amend the complaint is DENIED IN PART, as it pertains to the amendments sought pursuant to the 1991 Act. Because Defendant did not oppose Plaintiff's motion to reinstate the tort claim, however, Plaintiff may amend the complaint to add a claim for intentional infliction of emotional distress.

### PROCEDURAL HISTORY

On February 25, 1991, Plaintiff, Jane Doe, filed a complaint in the United States District Court, Southern District of Florida, alleging that her former employer, the Board of County Commissioners of Palm Beach County, Florida ("County"), had violated her rights under various federal and state law provisions. As grounds for the violations, Doe asserted that the County, acting through Doe's immediate supervisor, Sheri Kass, had harassed Doe, and ultimately terminated her employment, on account of Doe's black race and mental handicap.[1] The County had employed Doe as a deputy clerk for the Clerk of the Court, Palm Beach County, until her termination on April 26, 1989. (Answer to First Amended Complaint, D.E. # 9, at 2.)

In her complaint, Doe asserted claims for relief under the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 791 *et seq.* (West 1985 & Supp.1991); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e *et seq.* (West 1981 & Supp.1991); the Florida Human Rights Act of 1977, Fla.Stat.Ann. §§ 760.01 *et seq.* (West 1986 & Supp.1992); and the torts of negligence and intentional infliction of emotional distress.

On May 2, 1991, Doe filed her First Amended Complaint, reasserting the federal and state statutory claims, but abandoning the tort law claims.[2] Doe further amended the First Amended Complaint by interlineation to assert that she had exhausted her administrative remedies with respect to the Title VII claim through the EEOC's issuance of a right to sue letter, dated January 10, 1991.

Doe now moves to amend her First Amended Complaint to:

(1) Add a cause of action pursuant to 42 U.S.C.A. § 1981, as amended by the 1991 Act, demanding compensatory and punitive damages, costs, attorneys' fees, and a trial by jury, against the County for violating her right to contract to the same degree as is enjoyed by white citizens of the United States;[3]

---

1. Doe proceeds in this action under a pseudonym to keep the fact of her mental handicap from becoming subject to inspection by members of the public. (Order, D.E. # 14, at 1–2.)

2. The County had attacked the tort claims on various grounds, including failure to comply with the provisions of Fla.Stat.Ann. § 768.28 (West 1986 & Supp.1992). This statute, which partially waives Florida's sovereign immunity, provides, in pertinent part, that "[a]n action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency." Fla.Stat.Ann. § 768(28)(6)(a) (West 1986 & Supp.1992).

3. "A municipality cannot be held liable [under § 1981] for the acts of its employees without proof of a discriminatory custom or policy." *Gonzalez v. Public Health Trust,* 686 F.Supp. 898, 899 (S.D.Fla.1988) (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Doe's proposed § 1981

(2) Amend her Title VII cause of action to include compensatory and punitive damages, costs, attorneys' fees, and a trial by jury, as provided by the 1991 Act;[4]

(3) Add a cause of action for intentional infliction of emotional distress, demanding compensatory and punitive damages, costs, and a trial by jury.[5]

As discussed *supra*, the County did not address the tort claim in its memorandum in opposition to Doe's motion to amend. Therefore, the Court does not analyze the merits of the renewed tort claim, and proceeds to address the real dispute presented by the parties' briefs; that is, whether the 1991 Act permits Doe to assert the new federal claims.[6]

### STANDARD OF REVIEW

■ *Fed.R.Civ.P.* 15(a) provides that a party may amend its pleading by leave of court, "and leave shall be freely given when justice so requires." Courts generally view motions to amend pleadings with liberality.[7] Moreover, district courts have wide latitude in deciding motions to amend because the standard of review is clear abuse of discretion. *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1574 (11th Cir.1985). Nevertheless, the Eleventh Circuit teaches that in deciding whether to grant a motion to amend, the district court should consider the following factors:

(1) Undue delay, bad faith or dilatory motive on the part of the movant;

(2) Repeated failure to cure deficiencies by amendments previously allowed;

(3) Undue prejudice to the opposing party by virtue of allowance of the amendment; and

(4) Futility of amendment.

*Nolin v. Douglas County*, 903 F.2d 1546 (11th Cir.1990) (citing *Foman*, 371 U.S. at 182, 83 S.Ct. at 230).

Doe's proposed amendment is not the result of undue delay, bad faith or dilatory motive. As shown by the procedural history, Doe has acted in a timely fashion to amend her complaint in light of the newly enacted 1991 Act. Moreover, because this is the first time that Doe seeks to amend the federal claims in her complaint, Doe is not guilty of repeated failure to cure deficiencies in her complaint. Therefore, the first two *Foman* factors militate in favor of permitting Doe's amendment.

Application of the third and fourth *Foman* factors, however, require the Court to analyze in depth Doe's claim that the 1991 Act applies retroactively to her complaint. Indeed, concern about the prejudice to the County, which would result from the application of newly enacted statutory provisions to previous conduct, lies at the very heart of this Court's decision not to apply

---

count appears facially insufficient in light of the *Gonzalez* and *Monell* requirement that she allege a discriminatory custom or policy on the part of the County. The Court does not review the legal sufficiency of the § 1981 count, however, because the Court's determination of non-retroactivity disposes of Doe's motion to amend.

**4.** The Court notes that the 1991 Act does not provide punitive damages in Title VII claims against "a government, government agency or political subdivision." Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071 (to be codified at 42 U.S.C.A. § 1981a). Although the 1991 Act does not support Doe's demand for punitive damages against the County, the Court does not limit its analysis of the retroactive application of § 102 of the 1991 Act to compensatory damages.

**5.** Doe asserts that she has now complied with the notice provisions of Fla.Stat.Ann. § 768(28)(6)(a) (West 1986 & Supp.1992).

**6.** In her motion, Doe does not seek to amend her mental disability claim, brought pursuant to the Rehabilitation Act of 1973. Therefore, the Court does not address the potential applicability of the 1991 Act to that portion of Doe's complaint even though the 1991 Act includes violations of the Rehabilitation Act of 1973 in the new provisions for punitive and compensatory damages. Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071 (to be codified at 42 U.S.C.A. § 1981a).

**7.** *See Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir.1975) ("Courts have interpreted [amendment] provisions liberally, in line with the Federal Rules' overall goal of resolving disputes, insofar as possible, on the merits and in a single judicial proceeding.") (citing *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). *See also* Charles A. Wright et al., *Federal Practice and Procedure* §§ 1430, 1484 (2d Ed.1990).

the 1991 Act retroactively to the instant case. The determination of non-retroactivity, in turn, dictates that the proposed amendments would be futile.

## RETROACTIVITY OF THE 1991 ACT

The enactment of the 1991 Act has generated much controversy regarding the retroactive application of statutes.[8] District Courts who have ruled on the retroactivity issue are divided. *See e.g., Williams v. Healthcare Servs. Group, Inc.,* No. 87–8659–CIV (S.D.Fla. filed Jan. 22, 1992) (Zloch, J.) (not retroactive); *Van Meter v. Barr,* 778 F.Supp. 83 (D.C.1991) (not retroactive); *Hansel v. Public Serv. Co.,* 778 F.Supp. 1126 (D.Colo.1991) (not retroactive); *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992) (retroactive); *King v. Shelby Medical Ctr.,* 779 F.Supp. 157 (N.D.Ala.1991) (retroactive); *Mojica v. Gannett Co., Inc.,* 779 F.Supp. 94 (N.D.Ill. 1991) (retroactive).

In an effort to clarify the confusion, the Equal Employment Opportunity Commission issued a statement of policy that the 1991 Act did not apply to cases pending before the courts when the law was enacted. Robert Pear, *Agency Prohibits Use of New Law in Old Bias Cases,* N.Y. Times, Dec. 31, 1991, at A1, col. 3. At the heart of the controversy, however, lie two competing presumptions on retroactivity, arising from two obviously conflicting Supreme Court decisions. This legal conundrum places the issue of the 1991 Act's retroactivity squarely on the courts.

## A CONFLICT OF PRESUMPTIONS

■ In *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Court stated, "Retroactivity is not favored by the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language re-

quires this result." In *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), however, the Court had previously stated, "[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Although it has acknowledged this conflict of presumptions, the Court has declined to resolve it. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) ("We need not in this case, however, reconcile the two lines of precedent represented by *Bradley, supra,* and *Georgetown, supra,* because under either view, where the congressional intent is clear, it governs.") (citations omitted).

In his concurring opinion in *Kaiser,* however, Justice Scalia advocated that the Court adopt the non-retroactivity presumption of *Georgetown,* thereby overruling *Bradley. Kaiser,* 110 S.Ct. at 1588. (Scalia, J., concurring). In an extensive analysis, Justice Scalia traced the non-retroactivity presumption of *Georgetown* to the Court's established position prior to *Bradley. Id.* 110 S.Ct. at 1579–88. Justice Scalia stated, "During all of the 19th and most of the 20th centuries, our cases expressed and applied, to my knowledge without exception, the principle that legislation is to be applied only prospectively unless Congress specifies otherwise." *Id.* at 1579. He therefore characterized the *Bradley* presumption of retroactivity as "a departure from [the Court's] tradition," which the Court should now correct. *Id.* 110 S.Ct. at 1585–87.

Although other circuits faced with this dilemma have chosen to follow *Georgetown,*[9] a three judge panel of the Eleventh Circuit has recently stated that, "[U]nless otherwise directed by the United States

---

**8.** *See* J. Stephen Poor, *Rights Act's Retroactivity Still Disputed,* Nat'l L.J., Jan. 27, 1992, at 19.

**9.** *See e.g., Leland v. Federal Ins. Adm'r,* 934 F.2d 524, 527 (4th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991); *Simmons v. Lockhart,* 931 F.2d 1226, 1230 (8th Cir.1991);

*Alpo Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 963–64 n. 6 (D.C.Cir.1990); *Sargisson v. United States,* 913 F.2d 918, 923 (Fed.Cir. 1990); *DeVargas v. Mason,* 911 F.2d 1377, 1390 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

Supreme Court or the Eleventh Circuit en banc, we are bound by precedent to apply the *Bradley* analysis." *U.S. v. Peppertree Apartments*, 942 F.2d 1555 (11th Cir.1991). Therefore, this Court proceeds to apply the two-prong analysis of *Bradley*—clear legislative intent or manifest injustice—to conclude that the 1991 Act should not be applied retroactively in the instant case.

## THE LEGISLATIVE INTENT OF THE 1991 ACT

■ The 1991 Act's effective date provision states: "Except as otherwise specifically provided, the amendments made by this Act shall take effect upon enactment." Civil Rights Act of 1991, Pub.L. No. 102–166, § 402, 105 Stat. 1071 (to be codified in scattered sections of 29 U.S.C.A. and 42 U.S.C.A.). Because the amendments to § 1981 and Title VII do not specifically provide otherwise, the plain language of the statute indicates that its effective date is November 21, 1991. Civil Rights Act of 1991, Pub.L. No. 102–166, §§ 101–02, 105 Stat. 1071 (to be codified at 42 U.S.C.A. §§ 1981, 1981a).

The legislative history of the 1991 Act's predecessor, the Civil Rights Act of 1990 ("1990 Act"), further supports the conclusion that Congress did not intend the 1991 Act to be retroactive. The 1990 Act included explicitly retroactive transition rules. S. 2104, 101st Cong., 1st Sess. § 15 (1990).[10] President Bush vetoed the 1990 Act, stating as one of his reasons "unfair retroactivity rules." President's Message to the Senate Returning Without Approval the Civil Rights Act of 1990, 26 Weekly Comp.Pres. Doc. 1632, 1634 (Oct. 22, 1990). Congress did not override the veto. In contrast to the 1990 Act, the 1991 Act, contains no specific retroactive provisions.

Despite these clear indicia of non-retroactivity, however, as a result of the strong debate in Congress, the 1991 Act's legislative history contains contradictory statements from its sponsors. The Act's Repub-

lican sponsor, Senator Danforth, clearly stated that, "[T]he original cosponsors, who are the authors of the effective date provision, do not intend for the bill to have any retroactive effect or application." 137 Cong.Rec. S15483 (daily ed. Oct. 30, 1991) (statement of Sen. Danforth). Casting a shadow on this clear statement, however, is the statement of the Act's Democratic sponsor, Senator Kennedy, who stated that, "It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment." 137 Cong.Rec. S15485 (daily ed. Oct. 30, 1991).

The Eleventh Circuit has relied on the statements of a statute's sponsor to discern Congressional intent. *See Lussier v. Dugger*, 904 F.2d 661, 662 (11th Cir.1990) (applying the Civil Rights Restoration Act of 1987 retroactively by relying on the language of the statute and a sponsor's explicit statement that the bill should apply retroactively). However, in light of the conflicting visions of two major sponsors of the 1991 Act, this Court cannot rely on clear legislative intent to overcome the *Bradley* presumption of retroactivity. The Court, therefore, analyzes the 1991 Act in terms of the "manifest injustice" prong of *Bradley*.

## MANIFEST INJUSTICE AS TO THE NEW § 1981 CLAIM

■ 42 U.S.C.A. § 1981 (West 1981) provides that, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." The 1991 Act amends 42 U.S.C.A. § 1981 by defining the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071 (to be codified at 42 U.S.C.A. § 1981).[11]

**10.** Section 15 provided specific dates of application to proceedings already "pending on or commenced" for the various sections of the 1990 Act, as well as elaborate transition rules *Id.*

**11.** This provision effectively overrules the United States Supreme Court's holding in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson,* the

By expressly expanding the applicability of § 1981 to the performance and termination of contracts, including employment contracts, the 1991 Act creates a new statutory cause of action—a new right—for employees, such as Doe, who claim racially discriminatory employment treatment and termination.[12] This new employee right, in turn, alters the standard for measuring employers' conduct in employment termination, thereby creating a new source of liability for employers.[13] By invoking the provisions of a post-contractual statutory amendment, Doe now attempts to alter the rights and liabilities of her contractual relationship with the County.

In a case similarly affecting parties' contractual rights and liabilities, the Eleventh Circuit, following *Bradley*, has declined to apply a statutory amendment retroactively. *Wright v. Director, Fed. Emergency Mgmt. Agency*, 913 F.2d 1566, 1573 (11th Cir.1990). In *Wright*, the United States District Court for the Northern District of Florida awarded Wright, a homeowner, flood insurance benefits for losses that were excludable prior to the amendment. *Id.*, at 1568–69. The Eleventh Circuit, noting the contractual nature of the flood insurance policies, reversed. *Id.*, at 1574.

The Eleventh Circuit stated that although *Bradley* creates a presumption of retroactivity, "*Bradley* acknowledged exceptions to this rule in situations where retroactive application of a statutory or regulatory change would create the threat of 'manifest injustice.'" *Id.* at 1573. According to the Eleventh Circuit, therefore, "where a [statutory or] regulatory change interferes with matured or vested rights, the *Bradley* analysis coincides with the principle of prospective statutory application." *Id.* Because the contractual relationship in *Wright* "created unconditional and matured rights upon which the parties relied," the Eleventh Circuit determined that retroactive application of the statutory amendment was improper. *Id.* at 1574 (citing *Bennett v. New Jersey*, 470 U.S. 632, 640, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985)).[14]

Applying the *Wright* analysis, this Court concludes that permitting Doe to retroactively alter the rights and liabilities of her contractual relationship with the County would work manifest injustice on the County. Therefore, Doe may not amend her complaint to add a new cause of action under 42 U.S.C.A. § 1981, as amended by

---

Court held that an employee's claim of racial harassment by her supervisor, which the Court characterized as post-contract formation conduct, was not actionable under § 1981. *Id.* 109 S.Ct. at 2373–74. The Court stated that § 1981 "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* at 2374.

**12.** Doe's proposed § 1981 count states, in pertinent part:

In discriminating against plaintiff in the terms and conditions of her employment, because of her race, color and/or national origin, defendant, with gross recklessness or actual malice, violated plaintiff's *right to contract* to the same degree as is enjoyed by white citizens of the United States. In retaliating against plaintiff by discharging her because of her race, defendant, with gross recklessness or actual malice, violated plaintiff's *right to contract* to the same degree as is enjoyed by white citizens of the United States. (Second Amended Complaint, D.E. # 23, at ¶¶ 23–24) (emphasis added).

**13.** Prior to the 1991 Act's amendment of § 1981, racial discrimination in the course or termination of employment was actionable under "the more expansive reach of Title VII of the Civil Rights Act of 1964." *Patterson*, 109 S.Ct. at 2374. "In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." *Id.* at 2374–75.

**14.** Earlier in the opinion, the Eleventh Circuit had quoted the following passage from *Bennett*:

The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that has matured or become unconditional. This limitation comports with another venerable rule of statutory interpretation, i.e., that statutes affecting the substantive rights and liabilities are presumed to have only prospective effect. *Wright*, 913 F.2d at 1573 (quoting *Bennett*, 470 U.S. at 639, 105 S.Ct. at 1559).

the 1991 Act.[15]

## THE AMENDED TITLE VII CLAIM

■ 42 U.S.C.A. § 2000e–5(g) (West 1981), the enforcement provision of Title VII, provides for the following relief to victims of unlawful employment practices: enjoining the employer from the unlawful employment practice, ordering affirmative action, including reinstatement with or without back pay, and ordering "any other equitable relief the court deems appropriate." Due to the equitable nature of Title VII claims, courts have held that parties bringing such claims have no right to a jury trial. *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1529 n. 4 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990). The 1991 Act, however, amends Title VII to provide awards for punitive and compensatory damages to victims of unlawful intentional discrimination. Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071 (to be codified at 42 U.S.C.A. § 1981a). The 1991 Act also provides that a party seeking such compensatory or punitive damages, pursuant to the Act's new provisions, may demand a trial by jury. *Id.* Such parties may also seek attorneys' fees awards. Civil Rights Act of 1991, Pub.L. No. 102–166, § 103, 105 Stat. 1071 (to be codified at 42 U.S.C.A. § 1988).

Again applying the *Bradley* criterion of "manifest injustice," the Eleventh Circuit has held that "new statutes that affect antecedent rights will not apply retroactively while those that affect only procedure or remedy will apply retroactively." *United States v. Fernandez–Toledo,* 749

F.2d 703, 705 (11th Cir.1985) (citing *United States v. Vanella,* 619 F.2d 384, 385–86 (5th Cir.1980)). In *Fernandez–Toledo,* the Eleventh Circuit declined to give retroactive effect to a law that changed the conditions for pretrial release, stating that it would be "manifestly unjust to apply [a] new substantive law" to parties who had been released by the district court under the previous law, thereby affecting their antecedent right to bail. *Fernandez–Toledo,* 749 F.2d at 705. The Eleventh Circuit further noted that the new law effected changes in both the substantive and procedural aspects of the Bail Act, and declined to give the Act partial retroactivity. *Id.*

Like the statutory change in *Fernandez–Toledo,* the 1991 Act affects both substantive rights, and procedural or remedial matters. As discussed *supra,* the new cause of action under § 1981, affects the parties' antecedent rights. The Title VII amendments providing damages, jury trial, and attorneys' fees, on the other hand, are arguably procedural or remedial. *See* Lex K. Larson, Civil Rights Act of 1991, at 40 (1992). Although the Eleventh Circuit has applied procedural and remedial statutory changes retroactively,[16] to take such an approach on the Title VII claim would require that this Court give the Act partial retroactivity. In light of *Fernandez–Toledo,* however, this Court declines to take such a piece-meal approach. Therefore, the Court finds that Doe may not amend her Title VII claim.

## CONCLUSION

Because the Court finds that the 1991 Act does not apply retroactively to Doe's

---

**15.** In *Lussier v. Dugger,* 904 F.2d 661, 665–66 (11th Cir.1990), the Eleventh Circuit applied, retroactively, the Civil Rights Restoration Act of 1987, based on that Act's "expressed purpose of restoring the prior consistent and long-standing executive branch interpretation and broad, institution-wide application" of four civil rights statutes which the Supreme Court had construed in a narrower fashion. The Eleventh Circuit, however, viewed the Supreme Court's decision in *Patterson,* which the 1991 Act effectively overrules, as writing on a clean slate. *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1535 (11th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990). In *Sherman,* the Eleventh Circuit reversed a trial court's granting of relief for post-contract formation conduct

under § 1981 in light of the *Patterson* decision, stating, "When a trial court has granted a party relief under a statute that provides the party no relief, we must set the court's judgment aside as plain error." *Id.* at 1535.

**16.** *See e.g., Federal Deposit Ins. Corp. v. 232, Inc.,* 920 F.2d 815, 818–19 (11th Cir.1991) (applying a statute retroactively where such application would, at most, alter the forum in which the case is heard, a merely procedural matter); *U.S. v. Peppertree Apartments,* 942 F.2d 1555, 1560–61 (11th Cir.1991) (applying a double damages provision retroactively because the change was remedial in nature).

**1386**

claims, Doe's Motion to Amend Complaint is DENIED IN PART. As discussed *supra*, however, Doe may amend her First Amended Complaint to include a count for intentional infliction of emotional distress. Therefore, Doe has twenty (20) days from the date of this order to file a Second Amended Complaint adding only the tort claim.

DONE AND ORDERED.