**Antoniette MADDOX, Plaintiff,**

v.

**NORWOOD CLINIC, INC., Defendant.**

**No. CV–91–H–1452–S.**

United States District Court,
N.D. Alabama, S.D.

Feb. 4, 1992.

Samuel Fisher, Gordon Silberman Wiggins & Childs, Birmingham, Ala., for plaintiff.

David J. Middlebrooks, R. David Proctor, Sirote and Permutt P.C., Birmingham, Ala., for defendant.

MEMORANDUM OF OPINION

HANCOCK, District Judge.

The court has before it the December 17, 1991 motion to amend filed by plaintiff Antoniette Maddox in the above case. In her original complaint, filed on June 26, 1991, plaintiff invokes Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, charging her employer with *failure to promote* her because of her race. At the time this action was filed, Title VII proscribed the alleged misconduct

---

of defendant but Section 1981 did not. Section 1981 made unlawful racial discrimination only in the formation of contracts. On November 21, 1991, the Civil Rights Act of 1991 became effective. That Act amended Section 1981 to make unlawful racial discrimination of the kind allegedly here involved, that is, post formation of the contract conduct. *Thus, for the first time, a private employer of less than fifteen employees became accountable for racial employment discrimination occurring after the employment began.* The change in Section 1981 must therefore be viewed as a *substantive* change.

Plaintiff seeks to amend her complaint to include such a substantive claim under the newly amended provisions of 42 U.S.C. § 1981 and alternative claims for compensatory and punitive damages made available under Title VII (42 U.S.C. § 2000e) by the enactment of 42 U.S.C. § 1981a. Plaintiff's proposed amended complaint also contains a demand for a jury trial, which has always been available under Section 1981 but which, under limited circumstances, is now available under the Act in Title VII cases.

Plaintiff's motion came on for hearing at the court's regularly-scheduled motion docket held in Birmingham on January 24, 1992, at which time the parties were given the opportunity to present oral argument in support of or in opposition to plaintiff's motion. Having considered the arguments made by the parties both orally and in their briefs, the court concludes, for reasons set forth more fully below, that plaintiff's motion must be denied.

■ Because the filing of plaintiff's original complaint and the facts underlying her claims against defendant predate November 21, 1991, the date on which the Civil Rights Act of 1991 ("the Act") was enacted, plaintiff's ability to avail herself of changes made by the legislation depends on whether the Act applies to pending cases.[1] The United States Supreme Court has held that courts are "to apply the law in effect at the time [they render] a decision, unless doing so would result in manifest injustice or there is legislative history to the contrary." *Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).[2] To determine whether retroactive application of a statute would result in "manifest injustice," *Bradley* requires the court to consider the nature and identity of the parties, the nature of the parties' rights, and the nature of the impact of the change in the law on those rights. *Id.* at 717, 94 S.Ct. at 2019. The Eleventh Circuit has applied a "simplified" version of the *Bradley* "manifest injustice" test, holding that new statutes that affect antecedent rights will not apply retroactively, while those that affect only procedure or remedy will apply retroactively. *United States v. Fernandez–Toledo,* 749 F.2d 703, 705 n. 6 (11th Cir.1985). When new statutes contain both substantive and

---

1. The Act amends Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, the Attorney's Fees Awards Act of 1976, the Americans With Disabilities Act of 1990 and the Age Discrimination in Employment Act of 1967. It addresses such subjects as disparate impact, business necessity, bias after hiring, challenges to seniority systems, mixed motives, expert witness fees, extraterritoriality, compensatory and punitive damages, jury trials, interest and filing time in actions against the federal government, and "race norming" of test scores.

2. The Eleventh Circuit has acknowledged the confusion that surrounds the applicability of the *Bradley* analysis. *See Wright v. Director, Fed. Emergency Management Agency,* 913 F.2d 1566, 1573 (11th Cir.1990) ("[T]he principle affirmed in *Bradley* has generated some confusion in the federal courts, since it appears to conflict with the ... long-standing rule of statutory construc-

tion, restated in *Bowen* [*v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ], that favors the prospective application of statutes and regulations.") Noting that the Supreme Court has refused to clarify this confusion, *see Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), the Eleventh Circuit has elected to follow and considers itself bound by *Bradley* rather than *Bowen.* *United States v. Peppertree Apartments,* 942 F.2d 1555, 1561 n. 3 (11th Cir.1991). This court, therefore, is bound to apply the *Bradley* analysis absent direction to the contrary from the Eleventh Circuit or the Supreme Court. In doing so, however, the court finds that its conclusion regarding the retroactive application of the Civil Rights Act of 1991 would be the same regardless of whether it used the *Bradley* or the *Bowen* analysis.

procedural changes to the existing law, the Eleventh Circuit has refused to apply any part of the new statute retroactively.[3] *Id.*

■ This court, therefore, in determining the retroactivity of the Civil Rights Act of 1991, must consider the following questions: (1) Does the language of the Act itself address its application to pending cases? If so, there is no need to indulge in "presumptions" of retroactivity or nonretroactivity, and no need to consider the "manifest injustice" issue. If the Act does not expressly answer the question, then (2) Does the legislative history reflect Congressional intent that the Act either apply or not apply to pending cases? If so, then, as in step one, there is no need to consider "presumptions" of statutory construction or to make the "manifest injustice" inquiry. If neither the Act nor its legislative history indicate whether it should apply retroactively, then (3) Does application of the Act to pending cases result in the type of "manifest injustice" set forth in *Bradley?* If so, then the Act cannot be applied retroactively.

With two exceptions, the Act itself does not address the retroactivity of its provisions. The exceptions, contained in Sections 402(b) and 109(c), do not, however, convey an "unequivocal statutory directive mandating retroactive application" of the Act's provisions.[4] *Cox v. Schweiker,* 684 F.2d 310, 318–19 (5th Cir. Unit B 1982). Section 402(b) provides: "[n]otwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was rendered after October 30, 1983." At most this provision creates merely an inference that the remainder of the Act should be applied to pending cases. Moreover, it is clear that Section 402(b) was inserted solely to ensure that the disparate impact provision of the bill (Section 105) would not apply to the defendant in *Wards Cove Packing Co., Inc. v. Antonio,* 490 U.S. 642, 109 S.Ct.

2115, 104 L.Ed.2d 733 (1989), the only case satisfying Section 402(b)'s prerequisites. *See* Appendix C, EEOC Policy Guideline, pp. 3–4; *see also* 137 Cong.Rec. § 15,483 (daily ed. Oct. 30, 1991) ("[§ 402(b)] is intended only to provide additional assurance that the provisions of the bill will not be applied to certain cases that fit the description of [that] subsection" (statement of Sen. Danforth)); 137 Cong.Rec. § 15,953 (daily ed. Nov. 5, 1991) ("the intention of [§ 402(b)] is simply to honor a commitment to eliminate every shadow of a doubt as to any possibility of retroactive application to the case involving Wards Cove Company" (statement of Sen. Murkowski)); 137 Cong. Rec. S15,478 (daily ed. Oct. 30, 1991) ("at the request of the Senators from Alaska, section 22(b) specifically points out that nothing in the Act will apply retroactively to the Wards Cove Packing Company, an Alaska company that spent 24 years defending against a disparate impact challenge" (statement of Sen. Dole)).

The same argument stated above also applies to Section 109(c) of the Act. Referring to provisions relating to the Act's application outside U.S. territory, Section 109(c) states that those provisions "shall not apply with respect to conduct occurring before the date of the enactment of this Act." Section 109(c) is known as the "Arabian American exception," in reference to the Supreme Court's recent decision in *EEOC v. Arabian American Oil Co.,* —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (March 26, 1991), which held that Title VII does not apply to employment in foreign countries. Quite clearly the purpose of the nonretroactivity language in Section 109(c) was to prevent a reopening of the *Arabian American Oil* case. Like Section 402(b), this section allows at most an inference of retroactivity with regard to other provisions of the Act. Nowhere in the Act is there an express provision directing that

---

**3.** In using the term "retroactive," the court refers to application of the Act to pending cases involving pre-Act conduct.

**4.** The same can be said for Section 402(a), which states: "Except as otherwise specifically provided, this Act and the amendments made by

this Act shall take effect upon enactment." The court finds that Section 402(a) deals only with the Act's *effective date;* it does not indicate whether the Act, once effective, should or should not apply to pending cases.

the Act in general be given retroactive application; the absence of such a provision is the reason for the controversy now before the courts concerning the Act's reach.

When Congress wants a statute to apply retroactively, it is quite capable of saying so in plain, unequivocal language. Consider, for example, the changes made by Section 14 of the Equal Employment Opportunity Act of 1972:

> The amendments made by this Act to section 706 of the Civil Rights Act of 1964 *shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act* and all charges filed thereafter.

*See International Union of Elec., Radio and Mach. Workers, AFL–CIO Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 241, 97 S.Ct. 441, 449, 50 L.Ed.2d 427 (1976) (in light of such language, the Supreme Court held that the 180–day filing period created by the amendments applied to pending cases). Here there is no such language. The statute itself simply does not speak to the retroactivity of the Act as a whole; the court, therefore, must consider whether the Act's legislative history resolves the question.

In examining the history of the Act, the court is not impressed by statements from the various Senators and Representatives debating the legislation, in that one can find what seems to be an equal number of opinions supporting both prospective and retroactive application of the Act. The court is, however, persuaded by comparisons of early drafts of what became the 1991 statute, as well as a comparison of those drafts with the *1990* conference bill which passed both houses but was vetoed by the President. Provisions which were omitted from "failed" versions suggests a collective intent on the part of Congress to have the final Act apply only prospectively.

S.2104 was the conference version of the bill approved by the Senate on October 16, 1990 (136 Cong.Rec. S15327) and by the House on October 17, 1990 (136 Cong.Rec. H9984). On October 19, 1990, the bill was enrolled in the House (136 Cong.Rec. H10691) and in the Senate (136 Cong.Rec. S16239). Section 15 of S.2104 contained specific and detailed provisions that would have provided, in varying degrees, for retroactive application of the bill to "proceedings pending on or after" specific dates. S.2104 was vetoed by President Bush; the presidential veto was recorded in the Senate on October 22, 1990. *See* 136 Cong. Rec. S16457.

H.R. 1 (1991), the original House version of the Act, contained language virtually identical to Section 15 of S.2104. *See* H.R. 1, 102nd Cong., 1st Sess. § 113 (1991). This language was removed in the Senate version, S.1745, and it does not appear in the Act as ultimately signed by President Bush.

This legislative history demonstrates that Congress knew how to provide for retroactivity when it intended to do so; it also suggests that retroactivity was one of the issues on which compromise was necessary. The 1990 bill called for retroactivity but was vetoed, while the 1991 bill does not call for retroactivity; this indicates to the court a collective intent on the part of Congress to eliminate retroactive application of the statute.[5] More importantly, the fact that H.R. 1 (1991) had the retroactive language in it and S.1745 (1991) does not, coupled with the fact that the Act does not have the retroactive language, is even stronger evidence of this collective Congressional intent. The court is satisfied that Congress did not intend retroactive application of the Act.

Even if the above-described legislative history did *not* support a finding of non-retroactivity, the court, proceeding to step three in its analysis, finds that the nature of the statutory changes at issue precludes retroactive application of the Act. As men-

---

**5.** The court does not view Sections 402(b) or 109(c) as undermining this "collective intent" of nonretroactivity. For reasons discussed earlier in the order, these sections are self-contained exceptions to the legislation as a whole.

tioned earlier, the Eleventh Circuit has held that purely remedial statutory changes apply retroactively, while changes that affect *both substantive and procedural rights* do not. *See Fernandez–Toledo*, 749 F.2d at 705.[6]

Proponents of retroactivity argue that the Act affects only procedural and/or remedial rights, that it fails to impose any additional duties on defendants, and that the discriminatory conduct with which defendants are charged was prohibited by law prior to passage of the Act. Viewing the Act as a whole, the court cannot agree. For example, prior to the Act's enactment, a cause of action under Section 1981 existed only for racial discrimination in the formation of contracts. *Patterson v. McClean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Act, overruling *Patterson*, extends Section 1981 to conduct to which it did not previously apply. The new provisions create a cause of action for post-formation discrimination (e.g., demotion, discharge, harassment and certain promotions). *See* S.1745 Sec. 101(2)(b). Thus, employers are now exposed to liability for conduct which, prior to the passage of the Act, was not proscribed by Section 1981.[7] *More significantly, employers with less than fifteen employees are now exposed to claims for post-contract racial discrimination, claims which previously could not have been asserted against such employers under Section 1981, Title VII or any other federal statute.*

■ Other arguments for nonretroactivity might be made citing other changes effected by the Act;[8] the court, however, is convinced by the example set forth above that the Act contains at least a mixture of procedural and substantive changes. Under *Fernandez–Toledo*, the presence of any substantive changes precludes retroactive application of the Act in whole or in part.

Accordingly, the court concludes that the Civil Rights Act of 1991 does not apply to cases pending as of November 21, 1991, the date of the Act's enactment. Plaintiff's motion to amend, therefore, will by separate order be denied. The court, having determined that there is no just reason for delaying entry of final judgment as to its denial of plaintiff's motion to amend, shall expressly direct that such order be entered as a final judgment under Fed.R.Civ.P. 54(b).

6. In the *Fernandez–Toledo* case, the government had appealed an order of the district court allowing bail at a time when such an appeal was not authorized. While the appeal was pending, the Comprehensive Crime Control Act of 1984 became effective. In addition to making substantive changes in conditions authorizing release, that 1984 act expressly permitted the government to appeal an order granting bail. The Court of Appeals *refused to give the appellate rights therein contained retroactive application, since those procedural provisions were combined with substantive provisions: "In this case the changes in the substantive and procedural aspects of the Bail Act are contemporaneous.... We decline to give the Act partial retroactivity and therefore we order that the appeal be DISMISSED." *Id.*

7. Some might argue that the 1991 Act merely "restores" what were always substantive rights prior to the decision in *Patterson*. Such an argument assumes that the Supreme Court "misspoke" in *Patterson*, an assumption this court is not willing to make. This court views *Patterson* as defining Congressional intent regarding Section 1981 as the statute then existed. With the passage of the 1991 Act, Congress is now expressing a different intent.

8. For example, the Act makes compensatory and punitive damages available for intentional violations of Title VII and eliminates significant substantive defenses available under the Supreme Court's decisions in *Price–Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) and *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).