Alfred J. KING, Plaintiff,

v.

TANDY CORPORATION/RADIO SHACK, Defendant.

Civ. No. 91–78–ATH(DF).

United States District Court,
M.D. Georgia,
Athens Division.

July 24, 1992.

Amy S. Gellins, Joseph Calhoun Nelson, III, Athens, Ga., for plaintiff.

Everette L. Doffermyre, Debra M. Schneider, Atlanta, Ga., for Robert Hail.

FITZPATRICK, District Judge.

Pending before the court is a motion by the plaintiff to amend his complaint in this employment discrimination action to request all remedies available under the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (hereinafter "the Act"). More specifically, the plaintiff wishes to reinstate his claim under 42 U.S.C. § 1981, deleted from the original complaint, and seek all possible remedies under the amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, including compensatory and punitive damages and a jury trial. Alternatively, the plaintiff seeks a jury trial and compensatory and punitive damages without a § 1981 claim. Whether the amendment can be allowed turns on the question of whether the Act is to be applied retroactively to pending cases.

## I. RULES OF CONSTRUCTION

■ The question of whether a statute is retroactive is determined first and foremost by congressional intent as expressed by the law's language and history. Traditionally, there existed a strong presumption against the retroactivity of statutes which could only be overcome by a plain and clear legislative direction to the contrary. *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621–22, 11 L.Ed.2d 576 (1964); *United States v. Magnolia Petroleum Co.*, 276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928).

Absent such clear direction, a court must consider two conflicting lines of recent case law regarding the retroactivity of statutes which have cast some shadow over the traditional rule. In *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct.2006, 40 L.Ed.2d 476 (1974), the Supreme Court stated that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. In the later case of *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court said that "[r]etroactivity is not favored in the law.... congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208, 109 S.Ct. at 471. The Supreme Court has declined to resolve the conflict. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990).

Until recently, the Eleventh Circuit conclusively followed *Bradley*. In *U.S. v. Peppertree Apartments*, 942 F.2d 1555 (11th Cir.1991), the court retroactively applied a statute to award double damages to the government in a case involving the disbursement of funds in violation of regulatory agreements. After noting the confusion about whether to apply the rule of *Bradley* or that of *Bowen*, the court held that due to the Supreme Court's lack of direction it was bound by precedent to follow the *Bradley* analysis. *Id.* at 1561 n. 3. Just recently, however, the Supreme Court vacated *Peppertree* in the case of *Bailes v. United States*, — U.S. ——, 112 S.Ct. 1755, 118 L.Ed.2d 419 (1992), with instructions to the Eleventh Circuit to remand the case to the district court with instructions to vacate with prejudice that part of the damages award awarded under the retroactive application of the statute.

There is, therefore, some confusion about which rule to apply should the language of the Act and its history prove inconclusive. The Eleventh Circuit has applied the *Bradley* analysis for some time, even after *Bowen*. See, e.g., *Delmay v. Paine Webber*, 872 F.2d 356 (11th Cir. 1989); *Federal Deposit Ins. Corp. v. 232, Inc.*, 920 F.2d 815 (11th Cir.1991). (These cases can perhaps be distinguished from *Bowen* as involving rules issued by admin-

istrative agencies instead of statutes passed by Congress, although the passage quoted above from *Bowen* nullifies this possibility.) *Bowen* and *Bailes*, however, have thrown some doubt upon this practice. Whatever the factual differences in the two cases, the rules of law given in *Bowen* and *Bradley* are in direct conflict. It would seem, therefore, that the latter rule should predominate over the former and has perhaps implicitly overruled it, although Justice Scalia's concurrence in *Bonjorno* seems to indicate that this is not a correct conclusion by noting that the controversy is still ongoing.[1]

Faced with no clear guidance on which rule to apply, the court will apply the rules of both *Bowen* and *Bradley* should the language of the statute and its history fail to provide explicit direction.

## II. THE LANGUAGE OF THE ACT

Any analysis of the question of retroactivity must start with the language of the Act itself, which, absent a clearly expressed legislative intent to the contrary, must be regarded as conclusive. *Bread Political Action Committee v. Federal Election Comm'n*, 455 U.S. 577, 580–81, 102 S.Ct. 1235, 1237–38, 71 L.Ed.2d 432 (1982). Unfortunately, the Act contains no specific guidance on the question of retroactivity one way or the other, for if it did there would be no need for further analysis. The language of the statute does, however, provide some clues.

The Act provides that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Civil Rights Act of 1991, § 402(a). As noted by the Eighth Circuit, however, many statutes contain a compliance grace period, so this provision stating that the Act is effective immediately upon enactment cannot be considered evidence of congressional intent that the Act is to be applied retroactively. *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1376 (8th Cir.1992).

The Act itself indicates that it is to be applied only prospectively in its definition of a "complaining party." This term is defined as "in the case of a person *seeking to bring* an action under subsection (a)(1), the Equal Employment Opportunity Commission, the Attorney General, or a person *who may bring* an action or proceeding under title VII of the Civil Rights Act of 1964 ..." § 102(d)(1)(A) (emphasis added). The use of the emphasized terms shows that the Act is to be applied only to those who have yet to bring an action, not to persons whose cases are pending. *Tyree v. Riley*, 783 F.Supp. 877, 890 (D.N.J.1992); *Van Meter v. Barr*, 778 F.Supp. 83, 85 (D.D.C.1991).

There are two sections of the Act which are explicitly prospective. Section 109 was enacted to overrule *EEOC v. Arabian American Oil Co.*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), and apply the protections of Title VII to American citizens working overseas. The statute specifically provides, however, that "[t]he amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act." § 109(c). The Act also has language stating that "[n]otwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983." § 402(b). This latter section was intended to bar the retroactive application of the Act to the case of *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), which the Act nullified.

It is possible, as the plaintiff urges, to read these sections as barring the retroactive application of the Act only to these particular cases and allowing retroactivity by implication to other pending cases. The court believes, however, that a more reasonable interpretation would be that while these sections specifically bar the retroac-

---

**1.** Courts in other circuits have nonetheless applied *Bowen* alone to their analyses of whether the Act should be considered retroactive. *See, e.g., Khandelwal v. Compuadd Corp.*, 780 F.Supp. 1077 (E.D.Va.1992); *Cook v. Foster Forbes Glass*, 783 F.Supp. 1217 (E.D.Mo.1992) (both cases refusing to apply the Act retroactively).

tive application of the Act to the cited cases, they leave the question open as to others. This interpretation is in keeping with the comment made by Senator Kennedy, the Act's Democratic sponsor, that the question of retroactivity was ultimately to be left to the courts, *Doe v. Board of County Comm'rs*, 783 F.Supp. 1379, 1383 (S.D.Fla.1992)[2], and the fact that the Act contains no specific provision allowing retroactivity.

## III. THE LEGISLATIVE HISTORY

Like the language of the Act, the statute's legislative history contains no clear indication on the question of retroactivity, but hints that the Act should not be applied to pending cases. Before examining the Act's history, the court must state that it agrees with the sentiments expressed by Judge Acker of this circuit:

> Every federal court in the United States is now faced with the problem which this proposed amendment creates. Why? Because Congress in this new civil rights legislation punted on the question of whether or not the Act applies retroactively. Many senators and congressmen have deliberately tried to create a 'legislative history' to support their personal views on this question, but the fact is that Congress, for no good reason, deliberately chose not to include in the statute itself a provision either for retroactive or for prospective—only application.

*King v. Shelby Medical Center*, 779 F.Supp. 157, 157 (N.D.Ala.1991).

The circumstances in which the Act was passed are of interest. As noted by the Eighth Circuit, the President vetoed a 1990 bill designed to have much the same effects as the Act, in part because of its retroactivity rules. When the Act in question was being negotiated, the House's version again contained a provision retroactively overruling *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), but the bill which eventually became the Act, S.1745, deleted the retroactivity provisions. *Fray*, 960 F.2d at 1375–76. In *Fray*, the Eighth Circuit was faced with the question of whether § 101 of the Act, which overturned *Patterson*, was to be given retroactive effect. After discussing the conflicting precedents of *Bradley* and *Bowen* (which the court referred to as *Georgetown Hospital*) and giving an exhaustive account of the Act's history and the circumstances of its passage, the court concluded that the Act was not retroactive under either of the conflicting Supreme Court precedents. This is obviously the case under *Bowen*, but the court reached the same conclusion under *Bradley* after holding that the manifest injustice exception to that case's rule of retroactivity did *not* apply. The Eighth Circuit relied on the context of the Act's passage to support this conclusion:

> Here, the President vetoed a bill containing an explicit retroactivity provision. That veto could not be overridden and a compromise bill omitting those provisions was then enacted. Whatever ambiguities may be found elsewhere in the Act and its legislative history, we think this history is dispositive, even under *Bradley*. When a bill mandating retroactivity fails to pass, and a law omitting that mandate is then enacted, the legislative intent was surely that the new law be prospective only; any other conclusion simply ignores the realities of the legislative process.

960 F.2d at 1378 (citation omitted).

The Eighth Circuit therefore considered the circumstances of the Act's passage to be dispositive evidence that the Act was only to be applied prospectively. This court is not willing to read such a strong conclusion into this history. Likewise, the court is not willing to accept the argument of *Fray*'s dissenter that the circumstances of the passage of the Act show practically nothing conclusive at all. *Id.* 960 F.2d at 1379–80 (Heaney, J., dissenting). The primary reason for the court's reluctance to rely heavily on the political circumstances

---

**2.** Unfortunately, this court does not have direct access to the Congressional Record and so must cite to it through other cases. The court does acknowledge, however, the plaintiff's providing copies of certain pages from the Record.

cited by *Fray* is that similar reasoning could be applied to practically any question of statutory interpretation. A court should not base its interpretation of a statute on the political deals made to get it passed. Moreover, the Eighth Circuit's reasoning circumvents its own *Bradley* analysis. Instead, this factor is best considered as one of several arguing against retroactivity. *Contra, Maddox v. Norwood Clinic, Inc.*, 783 F.Supp. 582, 585 (N.D.Ala.1992).

The mere fact that Congress passed the Act largely to amend the existing law in response to a series of Supreme Court opinions unfavorable to employment discrimination plaintiffs cannot be taken as clear congressional intent that the Act is to be applied retroactively. *Fray*, 960 F.2d at 1377–78 (citing *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1387 (10th Cir.1990)).

Finally, as noted by the court in *Doe*, 783 F.Supp. 1379, the statements of the Act's sponsors show no clear legislative intent. Senator Danforth, the Act's Republican sponsor, stated explicitly that it was not to be applied retroactively, while Senator Kennedy said, as noted above, that the question was to be left to the courts, although he favored retroactivity. *Id.* at 1383; *Thompson v. Johnson & Johnson Management Information Center*, 783 F.Supp. 893, 896 (D.N.J.1992). Although statements made by a statute's sponsors are to be given special weight when discerning congressional intent, *see, Doe*, 783 F.Supp. at 1383 (citing *Lussier v. Dugger*, 904 F.2d 661 (11th Cir.1990)), the two statements give no clear indication and are in fact contradictory.

In sum, the circumstances of the Act's passage, its context and the statements of its sponsors show no clear Congressional intent regarding whether the Act should be applied retroactively, although the circumstances of its passage argue against such an application. The Act's history may therefore be taken as hinting against retroactivity.

## IV. THE EEOC'S INTERPRETATION

█ On December 27, 1991, the Equal Employment Opportunity Commission is-

sued a statement saying that the Act applies only to alleged discrimination occurring on or after the date it went into effect. 60 U.S.L.W. 2418 (Jan. 7, 1992). Absent clear legislative intent, the interpretation given to a statute by the agency which administers it is entitled to some deference as long as it is reasonable. *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)). Since the language of the Act and its legislative history do not give clear guidance on the question of retroactivity, the EEOC's interpretation appears reasonable. *Id.* This factor therefore weighs against retroactivity.

## V. CASE LAW

As noted at the outset, the plaintiff seeks to amend his complaint to assert a claims under the amended versions of § 1981 and/or Title VII. Since neither the Act's language nor its history is unarguably clear on whether the Act is retroactive and question of which case law rule to apply is as yet unresolved, the court will examine these possibilities under both *Bradley* and *Bowen*.

### A. Section 1981

█ Prior to *Patterson*, § 1981 had been given a broad interpretation to bar discrimination in practically any aspect of an employment situation. In *Patterson*, however, the Court narrowed the statute's scope by holding that § 1981, by its terms, applied only to bar discrimination in the "mak[ing] and enforc[ing]" of contracts. 491 U.S. at 176–78, 109 S.Ct. at 2372–73. Section 101(2)(b) of the Act was enacted to overturn *Patterson* by stating that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The question now is whether this amendment should be applied retroactively to the plaintiff's case.

Under *Bowen*, it is clear that the amendments to § 1981 contained in § 101 of the Act are not retroactive, since the Act contains no language to specifically overcome the strong presumption against retroactivity.

Under *Bradley*, there is a presumption in favor of retroactivity, unless such an application would result in a manifest injustice or there is statutory direction or legislative history to the contrary. In order to determine if an injustice would be worked by the retroactive application of a statute, a court should examine "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." The third factor "stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." 416 U.S. at 717–21, 94 S.Ct. at 2019–21. None of the three factors is in itself controlling, *Grimesy v. Huff*, 876 F.2d 738, 743 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1991), meaning that § 101 of the Act cannot be retroactive if such an application would result in a manifest injustice through any of the three factors.

Despite the lack of any clear direction in the Act's language or history, the court concludes that the amendments to § 1981 are not retroactive since so applying them would result in a manifest injustice. The reason for this conclusion is the change in the law worked by *Patterson*, as described above, and the Act's amendments to counter that case, which have resulted in expanded potential liability for employers. For the brief period between the date *Patterson* was handed down, June 15, 1989, and the Act became law, November 21, 1991, employers were held to a more lenient scope of potential liability under § 1981.

According to the complaint, the plaintiff was employed by the defendant from February, 1989, until May 31, 1990. It was after the plaintiff was promoted to the position of store manager on November 2, 1989, that the allegedly discriminatory acts, consisting mainly of harassment by a sub-ordinate, began to occur. Amended Complaint, paras. 11–27. While the relevant acts were occurring, from November 2, 1990, until May 31, 1990, *Patterson* was in full force and effect and would have barred a § 1981 claim since the acts complained of did not constitute the denial of an opportunity to make or enforce a contract. Instead the plaintiff's allegations fall into the category of harassment actionable under Title VII. The court's conclusion that the complaint does not support a § 1981 claim under *Patterson* is supported by the fact that before he filed the present motion to amend his complaint to add a § 1981 claim, the plaintiff filed an amended complaint deleting the § 1981 claim from his original complaint.

Clearly, the Act's amendments to § 1981 have imposed new and unanticipated obligations on employers. The defendant in this case is now subjected to a greater scope of potential liability that it was when *Patterson* was in effect, and it would certainly be unfair to subject the defendant to the possibility of retroactive liability for conduct which was not actionable under § 1981 when it occurred. Other courts have reached the same conclusion regarding § 101 of the Act. *See, e.g., Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225 (7th Cir.1992); *Doe*, 783 F.Supp. 1379; *Maddox*, 783 F.Supp. 582; *Toney v. Alabama*, 784 F.Supp. 1542 (M.D.Ala.1992); *Thompson*, 783 F.Supp. 893.

The court need not consider the first two aspects of the *Bradley* test for manifest injustice, since the impact of the Act on the rights of the parties clearly bars its retroactive application to the plaintiff's § 1981 claim.

### B. Title VII

■ Among other things, § 102 of the Act amends Title VII to allow victims of intentional discrimination to receive a jury trial and compensatory and punitive damages. Although no definitive ruling has been issued, the Supreme Court has strongly hinted that the Act is not to be applied retroactively to Title VII claims. In *United States v. Burke*, —— U.S. ——, 112 S.Ct.

1867, 119 L.Ed.2d 34 (1992), the Court held that backpay awards under Title VII are taxable as gross income. In rejecting the respondents' argument, citing the Act, that Title VII claims are tort-like in nature and should not be taxed, the Court stated at one point that the changes made by the Act signal "a marked change in [Congress'] conception of the injury redressable by Title VII, and cannot be imported back into analysis of the statute as it existed at the time of this lawsuit." Slip op. at 12 n. 12. This can only be read as an indication that the new remedies provided by the Act are not to be applied retroactively, but instead Title VII is to be applied as it was at the time of the lawsuit in question.

Stepping aside from this clear indication of the Supreme Court's intent, the court will continue and conduct an analysis based on *Bowen* and *Bradley*. As with the plaintiff's § 1981 claim, the *Bowen* rule clearly bars the retroactive application of the Act to the plaintiff's Title VII claim, since there is no clear statement favoring retroactivity in the Act's language.

Again, however, a more detailed consideration must be given under *Bradley* using the factors listed above. Once again, the emphasis is on whether the retroactive application of the Act would create a manifest injustice by changing the rights and obligations of the parties. This depends on the nature of the changes made in Title VII by the Act. Relying on *Bradley*, the Eleventh Circuit has held that new statutes affecting substantive antecedent rights are not to apply retroactively while those affecting only procedures or remedies may. *United States v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985). In that same case, the court declined to allow partial retroactivity for a statute which changed both substantive and procedural aspects of an existing law. *Id.* The court need not embark on a detailed analysis of whether the changes made in Title VII are substantive or procedural, for persuasive precedents exist holding that the Act should not apply retroactively in either case.

The reasoning of *Doe*, 783 F.Supp. 1379, is instructive. The court noted that the changes made by the Act in Title VII are arguably procedural or remedial while those in § 1981 are certainly substantive and so, citing *Fernandez–Toledo*, refused to allow the Act to apply retroactively in part to the plaintiff's Title VII claims. *Id.* at 1385. The Seventh Circuit has also rejected the partial application of the Act to pending cases, citing the confusion such an analysis would cause at the trial level. *Mozee v. Am. Commercial Marine Serv. Co.*, 963 F.2d 929 (7th Cir.1992).

Other courts have held that the changes made in Title VII by the Act are substantive rather than remedial, so that they cannot apply retroactively. This line of cases holds that these changes are more than procedural since defendants had no reason to earlier tailor their behavior to account for the possibility of a jury trial and compensatory and punitive damages. *See, e.g., Luddington*, 966 F.2d 225 (Judge Posner's reasoning is equally applicable to § 1981 and Title VII); *Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir.1992); *Tyree*, 783 F.Supp. at 891–92 (rejecting *Graham v. Bodine Electric Co.*, 782 F.Supp. 74 (N.D.Ill.1992)); *Van Meter*, 778 F.Supp. at 84–86 (Although the *Van Meter* court specifically stated that the plaintiff's proposed amendment to seek compensatory damages and a jury trial against *the United States* would be a major substantive change in the law, this court sees no reason why this same reasoning would not apply to a private defendant.); *Ribando v. United Airlines, Inc.*, 787 F.Supp. 827 (N.D.Ill.1992); *Sofferin v. American Airlines, Inc.*, 785 F.Supp. 780 (N.D.Ill.1992).

At least one court in this circuit has held that the Act can apply retroactively to Title VII claims under a *Bradley* analysis. In *Joyner v. Monier Roof Tile, Inc.*, 784 F.Supp. 872 (S.D.Fla.1992), the court held that there was no manifest injustice in applying the Act retroactively since the defendant had no vested right in the previous remedial scheme of Title VII and expressed no reluctance to apply the Act separately to Title VII and § 1981 claims. *Id.* at 878–80. This ignores the point mentioned above that defendants were under no previous obligation to be wary of the possibility of

jury trials and compensatory and punitive damages. While it is possible to argue that a defendant should not be allowed to escape increased penalties for behavior which has been illegal all along, the retroactive application of increased penalties has long been disfavored for obvious reasons. Such a plan is patently unfair and subject to abuse. As Judge Posner stated, "many of us would squawk very loudly indeed if people with unpaid parking tickets were made retroactively liable to life imprisonment; and in fact such a change although purely remedial would violate the ex post facto clause." *Luddington*, 966 F.2d 225, 229. Additionally, it must be noted that *Joyner*, like many other cases from this circuit, relied on *Peppertree*, 942 F.2d 1555, which has been vacated, and was issued before the Supreme Court's indication in *Burke* that the Act is not retroactive. This court therefore disagrees with *Joyner*.

Based on the reasoning of the cases cited above, the court concludes that it would be manifestly unjust under *Bradley* to allow the plaintiff to retroactively apply the Act's amendments to his Title VII claim, regardless of whether the amendments are considered procedural or substantive. The decision to deny the plaintiff's proposed Title VII amendments is strengthened by the Supreme Court's holdings in *Bowen* and *Burke* discussed above.

## VI. CONCLUSION

The court acknowledges that other courts have split on the question of the Act's retroactivity due to Congress' failure to provide clear guidance, *see, Fray*, 960 F.2d at 1383–84; *Joyner*, 784 F.Supp. at 880–81; *Thompson*, 783 F.Supp. at 894 n. 1 (all citing cases), but nonetheless believes that its conclusion is the right one. While unfortunately not determinative, the Act's language and history indicate that it is not retroactive. The EEOC's interpretation is also entitled to some weight. More telling than these factors, however, is the fact that the above analysis of the plaintiff's proposed amendments leaves the court with no doubt that the Act is not retroactive and so the amendments cannot be allowed. The motion to amend is DENIED in its entirety.

SO ORDERED.