**Richard L. TONEY, Plaintiff,**

v.

**STATE OF ALABAMA, Department of Corrections, Morris Thigpen, Commissioner, West Jefferson Facility, and Eddie Nagle, Warden of West Jefferson Facility, Defendants.**

No. CV–91–A–438–N.

United States District Court,
M.D. Alabama, N.D.

March 4, 1992.

Ann K. Norton, Byron R. Perkins, Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for plaintiff.

Harry A. Lyles, General Counsel, Milt Belcher, Asst. Atty. Gen., David B. Byrne, Jr., Robison & Belser, P.A., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

This cause is before the court for consideration of defendants' motion for summary

judgment filed August 26, 1991. Toney filed a response to said motion on October 18, 1991. The court has reviewed the parties' arguments and finds that defendants' motion for summary judgment is due to be granted in part and denied in part.

On April 23, 1992, plaintiff Richard Toney, an African–American male, filed this action against the State of Alabama, Alabama Department of Corrections and its Commissioner, Morris Thigpen, and West Jefferson Correctional Facility and its warden, Eddie Nagle. Toney alleges that defendants unlawfully terminated him from his position as a correctional officer at West Jefferson because of his race. Toney claims that defendants' conduct violated 42 U.S.C. § 1981, 42 U.S.C. § 1983 and 42 U.S.C. § 2000e, *et seq.*, commonly known as Title VII of the Civil Rights Act of 1964, as amended. He seeks compensatory damages and injunctive and declaratory relief.

Defendants argue that they are entitled to summary judgment. Defendants the State of Alabama, Department of Corrections and West Jefferson argue that they are entitled to summary judgment on Toney's §§ 1981 and 1983 claims because they are immune from suit under the Eleventh Amendment of the Constitution and because neither entity is a "person" within the meaning of 42 U.S.C. § 1983. Defendants Thigpen and Nagle argue that because they are state officials they also are immune from suit under these claims. Finally, defendants argue that they are entitled to summary judgment on Toney's § 1981 claim because Toney fails to state a claim upon which relief can be granted.

DISCUSSION

A. ELEVENTH AMENDMENT
IMMUNITY

██ It has long been recognized that the Eleventh Amendment to the Constitution of the United States bars suit in federal court by a private party against a state, a state agency or instrumentality or a state official. *Edelman v. Jordan*, 415 U.S. 651, 652, 94 S.Ct. 1347, 1350, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10

S.Ct. 504, 33 L.Ed. 842 (1890). Eleventh Amendment immunity is not absolute, however. A state or its agency may be subject to federal jurisdiction in two instances: (1) where Congress unequivocally abrogates such immunity in the language of a federal statute, *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); or (2) where the state has waived its immunity. *Edelman v. Jordan*, 415 U.S. at 673, 94 S.Ct. at 1360–61. Clearly, defendants have not consented to this court's jurisdiction, and Toney does not argue that defendants have waived their Eleventh Amendment immunity. See § 14 of the Alabama Constitution of 1901 ("the State of Alabama shall never be made a defendant in any court of law or equity.") The determination for the court is whether Congress abrogated eleventh amendment immunity protection in the federal statutes under which Toney seeks relief.

1. *TITLE VII CLAIM.*

██ In the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress authorized federal courts to award money damages to a private individual against state and local government employers found to have subjected that individual to employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). *See also* 42 U.S.C. § 2000e(a) and (f). Pursuant to its authority under the section 5 of the fourteenth amendment, Congress provided for private suits against the state as an employer, thereby abrogating the immunity conferred by the eleventh amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); *Allen v. Alabama State Bd. of Educ.*, 816 F.2d 575, 577 (11th Cir.1987). Thus, each of the defendants, including the State of Alabama and the Department of Corrections, is subject to this court's jurisdiction on Toney's Title VII claim.

2. *SECTIONS 1981 AND 1983.*

██ Unlike Title VII, 42 U.S.C. §§ 1981 and 1983 do not contain a congres-

sional abrogation of a state's eleventh amendment immunity. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989) (A state is not a "person" within the meaning of § 1983.); *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir. Unit A 1981) (No congressional waiver of a state's eleventh amendment immunity in § 1981.) Furthermore, because a suit for damages against a state official in his official capacity is, in substance, a suit against the state treasury, state officials also are entitled to eleventh amendment immunity from such liability in their official capacities. *Will,* 491 U.S. at 71, 109 S.Ct. at 2311–12. *See also Kentucky v. Graham,* 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). The eleventh amendment, however, does not bar suits for equitable relief against state officials in their official capacities, *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), nor for damages against state officials in their individual capacities. *Hafer v. Melo,* — U.S. —, —, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. at 167, 105 S.Ct. at 3106.

■ There is no doubt that the State of Alabama and the Department of Corrections are entitled to eleventh amendment immunity from suit on Toney's §§ 1981 and 1983 claims. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978). West Jefferson Correctional Facility is also entitled to immunity from suit under § 1981 and § 1983. *See Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). West Jefferson Correctional Facility is an essential unit of the Department of Corrections that assists the Department in fulfilling its purpose and objectives and that is wholly within the control of the Department. Any claim for damages against West Jefferson is essentially a claim against the state treasury. *See Comer v.*

*Bankhead,* 70 Ala. 493 (1881) (A contract with a correctional facility is inherently a contract with the Department.) *See also Sarradett v. University of South Alabama Medical Center,* 484 So.2d 426 (Ala. 1986).

■ The individual defendants, Thigpen and Nagle, are not cloaked with the same immunity as their respective agencies. To the extent that Toney seeks injunctive and declaratory relief on his §§ 1981 and 1983 claims, the defendant officials may be subject to liability in their official capacities. Toney's claim for compensatory damages is available only if Toney proves the officials to be liable in their personal capacities.[1]

Thus, for the foregoing reasons, Toney's Title VII claim shall proceed against each of the defendants and Toney's claims under 42 U.S.C. §§ 1981 and 1983 for injunctive and declaratory relief shall proceed against defendants Thigpen and Nagle in their official capacities and for compensatory relief against defendants Thigpen and Nagle in their personal capacities. This court does not have jurisdiction to subject the State of Alabama, Alabama Department of Corrections or West Jefferson Correctional Facility to liability under 42 U.S.C. §§ 1981 and 1983.

### B. FAILURE TO STATE A CLAIM UNDER 42 U.S.C. § 1981

■ Defendants argue that they are entitled to summary judgment on Toney's § 1981 claim because Toney cannot state a claim upon which relief can be granted. Defendants argue that because claims under § 1981 are limited to discrimination "only in the making and enforcement of contracts," *Patterson v. McLean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989), Toney's claims of unlawful termination and unfavorable treatment during his employment is not actionable under § 1981.

Title 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right

---

1. In their answer, defendants Thigpen and Nagle assert qualified immunity. Defendants do not pursue this defense in their motion for summary judgment.

in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...

Defendants correctly argue that in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court limited the scope of § 1981 to prohibiting discrimination "only in the making and enforcement of contracts." *Patterson,* 491 U.S. at 176, 109 S.Ct. at 2372. More specifically, regarding the prohibition against discrimination in the making of a contract, the Court stated:

The first of these protections [the right to make a contract] extends only to the formation of a contract, but not problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation

conduct does not involve the right to make a contract, but rather implicates performance of established contract obligations and conditions of continuing employment, matters more naturally governed by state contract law and Title VII. *Id.* at 176–177, 109 S.Ct. at 2372–73.

In applying these principles to the case before it, the Supreme Court only addressed Patterson's racial harassment in employment claim finding that such claim is not actionable under § 1981. *Id.* at 178, 109 S.Ct. at 2373.[2] However, based upon the *Patterson* analysis, several panel courts of the Eleventh Circuit have consistently declined to recognize a claim under § 1981 for discriminatory discharge as well as racial harassment in the course of employment. *See Stallworth v. Wells Fargo Armored Services Corp.,* 936 F.2d 522 (11th Cir.1991); *Busby v. City of Orlando,* 931 F.2d 764, 771 n. 6 (11th Cir.1991); *Thompkins v. Dekalb County Hosp. Authority,* 916 F.2d 600, 601 (11th Cir.1990) (per curiam); *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1534–35 (11th Cir. 1990) (per curiam). *See also Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1520 n. 19 (11th Cir.1991) (citations therein for a survey of other circuits holding that *Patterson*'s interpretation of § 1981 excludes claims for discriminatory discharge).[3]

---

**2.** Although Patterson's complaint alleged that she was subjected to harassment in her employment, denied promotion and ultimately discharged because of her race, in violation of § 1981, only two issues were before the Supreme Court: whether Patterson's claim of racial harassment in her employment is actionable under § 1981, and whether the District Court's jury instruction that in order to prevail on her § 1981 promotion, Patterson must show that she is better qualified than the white employee who received the promotion she sought. *Patterson,* 491 U.S. at 170–171, 109 S.Ct. at 2369–70. Thus, there was no opportunity for the Court to address whether § 1981 also precluded claims alleging discriminatory discharge.

**3.** Toney's reliance on a number of District Court decisions outside the Eleventh Circuit which hold that *Patterson* does not preclude claims alleging discriminatory discharge is not persuasive in the face of such a clear statement of law to the contrary by this circuit's Court of Appeals. Furthermore, the one Eleventh Circuit Court of Appeals decision cited by Toney, *Vance v. Southern Bell Telephone and Telegraph Co.,*

863 F.2d 1503 (11th Cir.1989), was issued prior to the Supreme Court's decision in *Patterson.*

Additionally, the court does not find guidance on this issue from the two post-*Patterson* decisions identified by plaintiff. In *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Court "assumed for purposes of [the pending] cases, *without deciding,* that petitioner's rights under § 1981 have been violated by his removal and reassignment" because the school district employer never argued in the lower court proceedings that § 1981 did not reach petitioner's employment injury. *Id.* at 711, 109 S.Ct. at 2710 (emphasis supplied). In *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), the only issue before the court was whether the limitations on municipal liability under § 1983 are applicable to violations of rights protected by § 1981. The Court vehemently declined to consider the question of *Patterson*'s effect on petitioner's § 1981 discriminatory discharge claim. *Id.* 494 U.S. at 551 n. 3, 110 S.Ct. at 1336 n. 3. The Fourth Circuit was directed to address this issue on remand.

Therefore, claims alleging discriminatory discharge or racial harassment in employment must look to Title VII for relief.

The gravamen of Toney's complaint is that he was not granted the same opportunity for medical leave and excused absences as his white colleagues and that he was eventually terminated because of his race. Toney's complaints are clearly matters that arose after he began his employment as a correctional officer with the Department of Corrections. In fact, Toney had been employed with the department for more than five years. Toney's complaint fails to reach "the critical point" of § 1981, "whether the employer, *at the time of the formation of the contract,* in fact intentionally refused to enter into a contract with the employee on racially neutral terms." *Patterson,* 491 U.S. at 184, 109 S.Ct. at 2376–77. Thus, Toney's claims alleging racial harassment in employment and discriminatory discharge are not actionable under § 1981.

Because the state of the law has changed since Toney filed his complaint, the court must examine whether the changes in the law affect the court's resolution of this issue. *See Bradley v. School Bd. of City,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (A court is to apply the law in effect at the time that it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.) [4]

■ On November 21, 1991, Congress enacted the *Civil Rights Act* of 1991. The Act amended § 1981a to define the term "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Section 102(a). By providing this definition, Congress effectively overruled *Patterson* and cases otherwise limiting the scope of § 1981a. Thus, under the amendment provided in the Act, Toney's allegations of racial harassment in employment and discriminatory discharge, would be actionable under § 1981a. By creating a cause of action where none existed previously, Congress made a substantive change in the provision of § 1981a. *See Van Meter v. Barr,* 778 F.Supp. 83 (D.C.1991). *Doe v. Board of County Commissioners,* 783 F.Supp. 1379, 1992 U.S. Dist. LEXIS 1258 (S.D.Fla.1992) *But see Watkins v. Bessemer State Technical College,* 782 F.Supp. 581 (N.D.Ala.1992) (§ 1981a amendment merely construes and clarifies prior statute to remove ambiguity related to the meaning "to make and enforce contracts".) [5] Given the availability of such claims under the Act, this court, like numerous other district courts, must now struggle with the determination whether the changes in the Act, particularly relating to § 1981, were intended to affect cases pending prior to the enactment of the statute.

Generally, the language of the statute or the legislative history is the best source for determining whether the statutory changes were intended to have a retroactive effect. There is no such assistance in the Civil Rights Act of 1991. The general enactment provision of the Act does not speak to the Act's effect on pending cases. The legislative history reads as a debate between the Senators on whether the Act would be applied retroactively or prospec-

---

**4.** In *United States v. Peppertree Apartments,* 942 F.2d 1555, 1561 n. 3 (11th Cir.1991), the Eleventh Circuit recognized that the *Bradley* analysis "appears to conflict with the ... longstanding rule of statutory construction, restated in *Bowen* [*v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ], that favors prospective application of statutes and regulations." *Quoting Wright v. Director, Fed. Emergency Management Agency,* 913 F.2d 1566, 1573 (11th Cir.1990). The Supreme Court also recognizes this confusion but has declined to address the issue. *See Kaiser Aluminum &*

*Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). Thus, absent a directive from the Supreme Court or the Eleventh Circuit en banc, the *Bradley* analysis is binding precedent in this circuit. *See Federal Deposit Ins. Corp. v. 232, Inc.,* 920 F.2d 815, 818 n. 4 (11th Cir.1991).

**5.** This court disagrees with that holding in *Watkins.* To so hold is to find that the majority of the Supreme Court in *Patterson* was wrong—something which a district court has no authority to do.

tively. Thus, because there is no legislative directive on the issue of retroactivity, the court must determine whether permitting Toney to avail himself of the 1991 Civil Rights Act amendment to § 1981a would result in "manifest injustice".[6]

The determination whether retroapplication of a statute would result in manifest injustice requires the court to review three factors: (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights. *Peppertree Apartments*, 942 F.2d at 1561, *citing Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019.

The dispute in this action involves a private party and a state agency. Given the presence of a state defendant, this cause certainly has the potential to affect the way the State does business through its employment contracts with Toney as well as other state employees. Although the dispute may not rise to the level of a national concern, it is more than a dispute among private actors. *See United States v. Marengo County Comm'n*, 731 F.2d 1546, 1554 (11th Cir.1984). In assessing the nature of the rights that are affected by the statutory change the court's focus is to determine whether the amendment interferes with mature or vested rights. *Wright*, 913 F.2d at 1573. Where such rights are affected, retroactive application of the statute is not appropriate. *Id. Cf. United States v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985) (Statutory changes that are remedial in nature, that is affecting only the available remedy, will apply retroactively).

Toney and defendants enjoyed a contractual employment relationship. Prior to the 1991 Civil Rights Act, the law was such that defendants had the right to believe that they could terminate an employee without being held liable under § 1981. The amendment dramatically alters this relationship by subjecting an employer to lia-

bility that did not exist at the time that the employer entered the employment relationship. Although an employer has never been free to discharge an employee for a racially discriminatory reason, prior to the Act an employee was limited to Title VII for redress, was required to satisfy the administrative requirements of that statute and was limited to remedies available therein. By creating a cause of action for liability under § 1981, employees are no longer required to first initiate administrative proceedings but may proceed directly to federal court for a jury trial and seek compensatory damages. Thus, the 1991 amendment to § 1981a would materially affect the contractual relationship between Toney and defendants and would result in manifest injustice. Accordingly, it would be improper to apply retroactively the Civil Rights Act of 1991.

The *Patterson* analysis as applied by the Eleventh Circuit governs the determination of whether Toney's allegations of racial harassment in employment and discriminatory discharge are actionable under § 1981. As stated above, the court finds that Toney fails to state a claim upon which relief can be granted under § 1981.

## CONCLUSION

For the foregoing reasons, it is hereby the ORDER of the court that defendants' motion for summary judgment be GRANTED in part and DENIED in part to the extent that

(1) defendants' motion for summary judgment on plaintiff's § 1981 claim is due to be and it is hereby GRANTED and plaintiff's claim for relief under § 1981 is due to be and it is hereby DISMISSED;

(2) defendants' motion for summary judgment based on eleventh amendment immunity is due to be and it is hereby GRANTED as to defendants the State of Alabama, Alabama Department of Correc-

---

6. The court does note that, while not determinative, it is significant that the 1990 version of similar legislation (S.2104), which was vetoed by President Bush and did not become law (136 Cong. Rec. § 16457) contained specific provisions which would have made the bill retroac-

tive (§ 15), that the original House version of the 1991 Act (H.R. 1) contained the same specific provision, and that the language was removed in the Senate version (S.1745) and does not appear in the Act as finally passed and signed into law.

tions, and West Jefferson Correctional Facility on plaintiff's claim for relief under § 1983; and

(3) defendants Thigpen's and Nagle's motion for summary judgment on plaintiff's § 1983 claim is due to be and it is hereby DENIED to the extent that defendants Thigpen and Nagle shall be subject to liability in their official capacity for declaratory and injunctive relief, and in their personal capacity for damages.

Accordingly, this cause shall proceed against all defendants on plaintiff's claim for relief pursuant to Title VII, 42 U.S.C. § 2000e et seq., and against defendants Thigpen and Nagle on plaintiff's claim for relief pursuant to 42 U.S.C. § 1983, subject to future consideration of defendants' qualified immunity defense.